CASE NO.: 24-13383-FF

UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

DON SMITH;
RAW MATERIALS CORP, A FLORIDA CORPORATION;
RAW ENERGY MATERIALS, CORP, A FLORIDA CORPORATION;
GLOBAL ENERGY SCIENCES, LLC, A FLORIDA LIMITED LIABILITY
COMPANY; and RAW, LLC, A FLORIDA LIMITED LIABILITY COMPANY,
Appellants,
v.

SONYA SALKIN SLOTT, TRUSTEE
Appellee.

On appeal from the
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:22-cv-61666-RKA
and the
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 21-bk-12188-PDR

**APPELLANTS' INITIAL BRIEF**

**FLORIDA BANKRUPTCY GROUP, LLC**
4121 N. 31st Ave.
Hollywood, FL 33021-2011
Attorneys for Appellants
954-893-7670

On the brief:
Kevin C. Gleason
BankruptcyLawyer@aol.com (direct email)
KGPAECMF@gmail.com (service email)

January 10, 2025

## I.  CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE

The Appellant certifies that the following listed persons and parties have an interest in the outcome of this case:

Altman, Roy K, District Court Judge

Bonacquisti, Mark, Attorney for Trustee

Gleason, Kevin C Attorney for Appellants

Golden, E. Scott

Global Energy Sciences, LLC, a Florida limited liability company; Appellant

Malnik, Zachary, Attorney for Trustee

Raw Energy Materials, Corp, a Florida corporation, Appellant

Raw Materials Corp., Appellant

Raw, LLC, Appellant

Russin, Peter, Bankruptcy Judge

Slott, Sonya Salkin, Trustee

Smith, Donald, Appellant

Yellow Turtle Design, LLC

No corporate disclosure information is pertinent in this matter.

i

## II.  STATEMENT REGARDING ORAL ARGUMENT

The Appellants request oral argument.  The factual complexities of the record and legal complexities lend themselves to inquiry of the Court in oral argument.

## III.  TABLE OF CONTENTS

I.  CERTIFICATE OF INTERESTED PERSONS AND
      CORPORATE DISCLOSURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

II.  STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . ii

III.  TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

IV. TABLE OF CITATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

V.  JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

VI.  ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

VII. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

VIII.  STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      Rulings Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      Facts Relevant to the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IX.  SUMMARY OF THE ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

X.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      The Court Erred in Granting Equitable Relief by Motion. . . . . . . . . . . . . . 9
      The Court Lacked *In Personam* Jurisdiction Over Non-Debtors . . . . . . . . 16
      The Court Erred by Applying Collateral Estoppel . . . . . . . . . . . . . . . . . . 17
      The Court Erred by Giving *Nunc Pro Tunc* Effect to its Order . . . . . . . . . 24
      The Court Does Not Have Subject-Matter Jurisdiction to Substantively
          Consolidate Non-Debtor Entities into the Bankruptcy Estate . . . . . 28

XI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## IV. TABLE OF CITATIONS

**FEDERAL CASES**

Arbaugh v. Y&H Corp., 546 U.S. 500,126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Archdiocese of Saint Paul & Minneapolis, In re, 553 B.R. 693 (Bankr. D. Minn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Archdiocese of Saint Paul & Minneapolis, In re, 888 F.3d 944, 953 (8th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Burke v. Smith, 252 F.3d 1260 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 17

Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc., 498 U.S. 533, 111 S. Ct. 922, 112 L. Ed. 2d 1140 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

City of Milwaukee v. Illinois & Michigan, 451 U.S. 304, 101 S. Ct. 1784, 68 L. Ed. 2d 114 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Cromwell v. Sac Cty., 94 U.S. 351, 24 L. Ed. 195 (1876) . . . . . . . . . . . . . . . . . 18

Cutuli, In re, 389 F. Supp. 3d 1051 (M.D. Fla. 2019) . . . . . . . . . . . . . . . . . . . . 17

Czyzewski v. Jevic Holding Corp., 580 U.S. 451,137 S.Ct. 973, 197 L.Ed. 2d 398 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Eastgroup Properties v. S. Motel Ass'n, Ltd., 935 F.2d 245 (11th Cir. 1991) . . . 15

Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). . . 35

Fed. Home Loan Mortg. Corp. v. Matassino, 517 Fed.Appx. 687 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 26, 28

Fla. State Conf. of N.A.A.C.P. v. Browning, 522 F.3d 1153 (11th Cir. 2008) . . . 12

Great Lakes Ins. SE v. Crabtree, 673 F. Supp. 3d 1301 (S.D. Fla. 2023) . . 9, 17, 18

Harrington v. Purdue Pharma L. P., 603 U.S. 204, 144 S. Ct. 2071, 219 L. Ed. 2d 721 (2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs., 553 F.3d 1351 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Hoffman, In re, 22 F.4th 1341(11th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Kerr Corp. v. Westside Res., Inc., No. 07-C-0177-C, 2007 WL 5613512, at *2 (W.D. Wis. Sept. 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Kontrick v. Ryan, 540 U.S. 443, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004). . . . . . 4

Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp., 933 F.2d 724 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Law v. Siegel, 571 U.S. 415, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014). . . . . . . 34

Lizarazo v. Miami-Dade Corr. & Rehab. Dep't, 878 F.3d 1008 (11th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Meehan, In re, 102 F.3d 1209 (11th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330 (11th Cir. 2011) . . 35

Montana v. United States, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pearlman, In re, 462 B.R. 849 (Bankr. M.D. Fla. 2012) . . . . . . . . . . . . . . . . 28, 32

Phuc Quang Le v. Humphrey, 703 F. App'x 830 (11th Cir. 2017) . . . . . . . . . . 2, 28

vi

Pinares v. United Techs. Corp., 973 F.3d 1254 (11th Cir. 2020) . . . . . . . . . . . . . 12

Prewitt Enters., Inc. v. Org. of Petroleum Exp. Countries, 353 F.3d 916 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235 (11th Cir. 1999) . . . . . . . . . . . 17, 18

Richards v. Jefferson Cnty., Ala., 517 U.S. 793, 116 S. Ct. 1761, 135 L. Ed. 2d 76 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Rohe v. Wells Fargo Bank, N.A., 988 F.3d 1256 (11th Cir. 2021) . . . . . . . . . . . 25

Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano, 589 U.S. 57, 140 S. Ct. 696, 206 L. Ed. 2d 1 (2020) . . . . . . . . . . . . . . . . . . . . . . . . 25

Russell Motor Car Co. v. United States, 261 U.S. 514, 43 S. Ct. 428, 67 L. Ed. 778 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sabal Trail Transmission, LLC v. 3.921 Acres of Land in Lake Cnty. Fla., 74 F.4th 1346 (11th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Sargeant v. Hall, 951 F.3d 1280 (11th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . 9

Savage Servs. Corp. v. United States, 25 F.4th 925 (11th Cir. 2022) . . . . . . . . . 13

Taylor v. Sturgell, 553 U.S. 880, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) . . . 22

Torres v. Wal-Mart, 555 F. Supp. 3d 1276 (S.D. Fla. 2021) . . . . . . . . . . . . . 11, 12

United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 34

Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 135 S. Ct. 1932, 191 L. Ed. 2d 911 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Witko, In re, 374 F.3d 1040 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 38

Worldwide Web Sys., Inc., In re, 328 F.3d 1291 (11th Cir. 2003) . . . . . . . . . . . 16

**FEDERAL STATUTES**

11 U.S.C. § 303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

11 U.S.C. § 544 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

11 U.S.C. §1112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §154(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §158(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**FEDERAL RULES**

Bankruptcy Rule 7001 . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8-10, 12, 13, 15, 16

Local Rule 9010-1(B)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**OTHER AUTHORITIES**

2024 Committee Note. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

MERRIAM-WEBSTER, "Are" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

MERRIAM-WEBSTER, "Be" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## V.  JURISDICTIONAL STATEMENT

The United States District Court for the Southern District of Florida (the "District Court") had jurisdiction to hear an appeal from the final order of the United States Bankruptcy Court for the Southern District of Florida (the "Court") pursuant to 28 U.S.C.§154(a)(1).

The Eleventh Circuit Court of Appeals (this "Court of Appeals") has jurisdiction of this appeal pursuant to 28 U.S.C. §158(d)(1), 28 U.S.C. § 1291.

The District Court's Order Affirming Bankruptcy Court was entered on October 17, 2024.[1] A Notice of Appeal to this Court of Appeals was timely-filed on October 17, 2024.  This is an appeal from a final order that disposes of all parties' claims.

## VI.  ISSUES PRESENTED

1.    Did the Court err in granting equitable relief by motion in derogation of Bankruptcy Rule 7001(g) and over the objection of the Appellants?[2]

2.    Did the Court fail to obtain *in personam* jurisdiction over non-debtors?

---

[1]  ECF 536.  Court papers filed in the Bankruptcy Court are referred to as "ECF x", which corresponds to the tabs in the Appendix.

[2] The Federal Rules of Bankruptcy Procedure were amended as of December 1, 2024.  Most of the amendments were stylistic.  Unless there is a substantive difference, all citations herein shall refer to rules in effect before December 1, 2024, which will be referred to as "Rule x".

3.    Did the Court err by applying collateral estoppel where the parties and

issues were neither identical, nor essential to the initial determination?

4.    Did the Court err by belatedly giving *nunc pro tunc* effect to its substantive

consolidation order while the subject order was on appeal?

5.    Did the Court have subject-matter jurisdiction to substantively consolidate

non-debtor entities into the bankruptcy estate?

## VII. STANDARD OF REVIEW

"When .. the district court affirms the bankruptcy court's order, we consider

the bankruptcy court's decision directly." *In re Hoffman*, 22 F.4th 1341, 1344

(11th Cir. 2022)(citations omitted)(Questions of law receive a de novo review.)

"Review of ... interpretation[s] of a federal rule is plenary. *Lizarazo v.*

*Miami-Dade Corr. & Rehab. Dep't*, 878 F.3d 1008, 1010 (11th Cir. 2017). "We

review the district court's decision to amend its prior order of dismissal under Rule

60(a) for abuse of discretion. *See, e.g.*, *Rivera v. PNS Stores, Inc.*, 647 F.3d 188,

193 (5th Cir.2011)" *Fed. Home Loan Mortg. Corp. v. Matassino*, 517 F. App'x

687, 688 (11th Cir. 2013)(*accord*, *Phuc Quang Le v. Humphrey*, 703 F. App'x 830,

835 (11th Cir. 2017).

2

## VIII.  STATEMENT OF THE CASE

Introduction

On motion of one "creditor"[3], the Chapter 11 case of No Rust Rebar, Inc. (the "Debtor") was converted to a liquidation.[4]  Over a year later, factual findings supporting conversion to liquidation were adopted, wholesale, by the Court in support of a Trustee's motion to substantively consolidate non-debtor, third-party entities into the Chapter 7 estate[5], without an evidentiary hearing.  While the substantive consolidation order was on appeal, the Court gave the unambiguous substantive consolidation order *nunc pro tunc* effect.[6]

Finding for the Appellants on any one of five issues will mandate reversal:

1.    The Supreme Court of the United States promulgated Bankruptcy Rule 7001(7)[7] pursuant to which equitable relief, such as substantive consolidation, must be pursued by adversary proceeding, not motion;

2.    Obtaining *in personam* jurisdiction over non-debtor persons and their assets

---

[3]  [ECF 116]. The movant, Green Tech Development, LLC did not hold an allowed claim as of the date of conversion to Chapter 7.  See DE 123.

[4] ECF 193.

[5] ECF 441.

[6]  ECF 514.

[7] Currently designated as Bankruptcy Rule 7001(g).

must be accomplished by service of a summons;

3.       Collateral estoppel is not preclusive where the essential issues and parties are not identical;

4.       Substantive consolidation cannot be given *nunc pro tunc* effect, particularly while on appeal;

5.       Substantive consolidation of a non-debtor into a debtor's estate is extra judicial, *ultra vires*, as it is not a power delegated to a bankruptcy court through the Bankruptcy Code.[8]

Procedural History

The Debtor filed Chapter 11 bankruptcy on March 5, 2021.[9] By Order of May 23, 2022, the case was converted to a case under Chapter 7 (the "Conversion Order").[10] Sonya Salkin (the "Trustee") was appointed Trustee.[11]

---

[8] "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 1244, 163 L. Ed. 2d 1097 (2006)(Citations omitted). "A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance." *Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S. Ct. 906, 915, 157 L. Ed. 2d 867 (2004).

[9] DE 1. Citations to entries on the docket of the bankruptcy court, which documents are not included in the Appendix, are noted as "DE x".

[10] ECF193.

[11] ECF 195.

On February 3, 2023, the Trustee filed a motion to substantively consolidate the corporate Appellants into the bankruptcy estate (the "Sub Con Motion").[12] The corporate Appellants are: Raw Materials Corp, a Florida corporation; Raw Energy Materials, Corp, a Florida corporation; Global Energy Sciences, LLC, a Florida limited liability company; and Raw, LLC, a Florida limited liability company. The corporate Appellants will be referred to herein as the "Targets".

After non-evidentiary hearings, the Court's Order Granting Trustee's Motion to Substantively Consolidate (the "Sub Con Order") was entered on July 12, 2023.[13] The Targets filed Notices of Appeal on July 13, 2023 and July 25, 2023.[14] While the Sub Con Order was on appeal, the Court entered its Sua Sponte Order Stating Intended Meaning of Order Granting Trustee's Motion to Substantively Consolidate (the "*Nunc Pro Tunc* Order"), in which it gave the Sub Con Order *nunc pro tunc* effect back 2 years and 4 months.[15] On October 17, 2024, the District Court affirmed the Sub Con Order, without consideration of the *Nunc*

---

[12] ECF 385.

[13] ECF 441.

[14] DEs 442, 469.

[15] ECF 514.

5

*Pro Tunc* Order, which was not a part of the record.[16] An appeal was timely taken to this Court of Appeals on October 17, 2024.

Rulings Presented for Review

This appeal seeks review of the Sub Con Order,[17] as amended by the *Nunc Pro Tunc* Order.[18]

Facts Relevant to the Issues

The Debtor filed Chapter 11 bankruptcy on March 5, 2021.[19] A motion to convert the case to Chapter 7 pursuant to 11 U.S.C. § 1112(b) was filed by Green Tech Development, LLC (the "Creditor") on November 21, 2021, which was not served on all the Targets.  Don Smith and Global Energy Sciences, LLC were served.[20] The Creditor's counsel was directed to serve the Notice of Hearing on "all required parties", but failed to do so.[21] Notice of a continued hearing on

---

[16] ECF 536.

[17] ECF 441.

[18]  ECF 514.

[19]  ECF 1.

[20] ECF 116.

[21] ECFs 117, 120, 141, for which there are no corresponding Certificates of Service.

6

conversion[22] was served on Don Smith and Global Energy Sciences, LLC after the evidentiary hearings were already commenced.[23] By Order of May 23, 2022, the case was converted to a case under Chapter 7 (the "Conversion Order").[24]  The Creditor's counsel was, once again, directed to serve the "Order on all interested parties", but failed to do so.[25]

Ten months after her appointment, the Trustee filed a motion to substantively consolidate the Targets into the bankruptcy estate of the Debtor (the "Sub Con Motion").[26]  The Targets filed an Objection to the Sub Con Motion noting, *inter alia*: that the Targets were not parties to the Conversion Order, preventing preclusion; lack of personal jurisdiction; and lack of procedural due process.[27] The Trustee supplemented the Sub Con Motion.[28] The Targets

---

[22]  ECF147.

[23] ECF 148.

[24] ECF 193.

[25] The record does not include a Certificate of Service for the Order Converting Case to Chapter 7, DE 193.

[26]  ECF 385.

[27] ECF 391.

[28] ECF 394.

7

responded[29] to the Trustee's supplement further elaborating upon the objections in their earlier opposition, adding specific reference to Bankruptcy Rule 7001(7).[30] The Trustee replied to the Targets' response.[31]

No evidence was taken in support of Sub Con Motion,[32] rather, the Sub Con Order was based entirely upon the findings in the Conversion Order.[33] Appeals ensued.

## IX.  SUMMARY OF THE ARGUMENTS

Bankruptcy Rule 7001(7), promulgated by the Supreme Court of the United States (the "Supreme Court"), unambiguously requires that equitable relief be pursued with procedural due process inherent in an adversary proceeding.

No court can appropriate the assets of non-debtor entities without first obtaining *in personam* jurisdiction over those entities and their assets.

Where parties and essential issues are not identical, evidence taken in a statutory hearing cannot be used preclusively to obtain non-statutory equitable

---

[29] ECF 395, p. 8/10.

[30] Now denominated as 7001(g).

[31]  ECF 416.

[32]  ECF 388.

[33]  ECF 441.

8

relief.

Substantive consolidation judgments cannot have *nunc pro tunc* effect, and certainly cannot be given *nunc pro tunc* effect while an appeal is pending.

There is neither federal common-law, nor statutory authority pursuant to which a bankruptcy court has subject-matter jurisdiction to substantively consolidate a non-debtor into a debtor's estate.

## X.  ARGUMENT

**The Court Erred in Granting Equitable Relief by Motion.**[34]

"As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous." *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 540–41, 111 S. Ct. 922, 928, 112 L. Ed. 2d 1140 (1991)*(accord Sargeant v. Hall*, 951 F.3d 1280, 1282 (11th Cir. 2020)("We give the Federal Rules of Civil Procedure their plain meaning.").

The Supreme Court of the United States, pursuant to authority granted by Congress, promulgated bankruptcy rules, among which is Rule 7001, which provided, in pertinent part (emphasis added),

An adversary proceeding is governed by the rules of this Part VII.
The following are adversary proceedings:

---

[34] The following analysis borrows heavily from a similar analysis in *Great Lakes Ins. SE v. Crabtree*, 673 F. Supp. 3d 1301, 1303–12 (S.D. Fla. 2023).

(1) a proceeding to recover money or property, other than a
proceeding to compel the debtor to deliver property to the trustee, or a
proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule
6002;
(2) a proceeding to determine the validity, priority, or extent of a lien
or other interest in property, but not a proceeding under Rule 3012 or
Rule 4003(d);

***

(7) a proceeding to obtain an injunction or other equitable relief,
*except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan
provides for the relief*;
(8) a proceeding to subordinate any allowed claim or interest, except
when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides
for subordination...

The decretal paragraph of the Sub Con Order provides, "the assets and

liabilities of Raw Material Corp., Raw Energy Materials Corp., Global Energy

Sciences, LLC, and Raw, LLC are substantively consolidated with the bankruptcy

estate..." The Sub Con Order: recovered money or property from the Targets;

determined the estate's interest in property of the Targets; effectively subordinated

whatever claims some of the Targets held against the Debtor; and accomplished all

of the foregoing through non-statutory, extraordinary equitable relief by motion

and without taking evidence!

The Targets objected to the Court's failure to follow the dictates of

Bankruptcy Rule 7001(7).[35] Rather than apply thirty words of the Rule, as clearly

---

[35] ECF 391, ¶ 5, ECF 395, p. 8.

10

written, the Court wrote five pages explaining why the Trustee was not required to follow the Rule, engaging in "a-textual reflections that elevate considerations of policy over the plain meaning of the Rule's text." *Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d 1276, 1291 (S.D. Fla. 2021) (Altman, J.).

"Courts may consider the purpose of a rule or statute in interpreting the rule's meaning, but only when the language is ambiguous. They are not free to add elements to the rule simply because they believe the rule would be better that way." *Kerr Corp. v. Westside Res., Inc.*, No. 07-C-0177-C, 2007 WL 5613512, at *2 (W.D. Wis. Sept. 27, 2007), aff'd, 273 F. App'x 944 (Fed. Cir. 2008).

The Court added to the Rule in an apparent effort to make it more efficient or more just in the Court's eyes, but had no authority to do so. "The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *** [Where the text of a rule is clear,] "purpose ... cannot be used to contradict text or to supplement it."... "Purpose sheds light only on deciding which of various *textually permissible meanings* should be adopted. No text pursues its purpose at all costs." *** "Nothing is to be added to what the text states or reasonably implies (*casus omissus pro omisso habendus est*.") A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56, 57, 93 (2012)(emphasis in original).

11

Without regard to the Court's reason for not abiding by the requirements of the Rule, the Court's failure follow the Rule constituted a material error. "[We] needn't speculate further about whether this Rule makes sense because, '[i]f Congress had wanted' us to use a different metric, 'it would have said so.' " *Torres*, *supra* at 1291 (*quoting Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1172 (11th Cir. 2008)).

In that the Supreme Court listed specific inapplicable exceptions to seek equitable relief by motion, no additional exceptions to the Rule are tolerable. "Where Congress knows how to say something but chooses not to, its silence is controlling." *Pinares v. United Techs. Corp.*, 973 F.3d 1254, 1262 (11th Cir. 2020)(citation omitted).

Of note is that the Supreme Court adopted additional exceptions to Rule 7001, explained in the 2024 Committee Note, which provides, in pertinent part,

> Additionally, the following substantive changes have been made. Paragraph (a) is amended to create an exception for certain turnover proceedings under § 542(a) of the Code. An individual debtor may need to obtain the prompt return from a third party of tangible personal property—such as an automobile or tools of the trade—in order to produce income to fund a plan or to regain the use of property that may be exempted. As noted by Justice Sotomayor in her concurrence in City of Chicago v. Fulton, 141 S. Ct. 585, 592-95 (2021), the more formal procedures applicable to adversary proceedings can be too time-consuming in such a situation. Instead, the debtor can now proceed by motion to require turnover of such property under § 542(a), and the procedures of Rule 9014 will apply. In an

12

appropriate case, however, Rule 9014(c) allows the court to order that additional provisions of Part VII of the rules will apply to the matter.

Thus, the only issue before the Court, the District Court, and this Court of Appeals is whether the Rule applies when a target entity objects to a bankruptcy trustee's invocation of equitable powers to substantively consolidate non-debtor third parties into a bankruptcy estate by simple motion. Applying the plain meaning of the words in the Rule, it obviously does.

One may reasonably presume that if the Supreme Court intended the Rule to have more exceptions, it would have included them, as recently as last year, or in the numerous amendments since 1979. The Supreme Court certainly knows how to except some equitable relief from adversary proceedings. *cf*. *Savage Servs. Corp. v. United States*, 25 F.4th 925, 935 (11th Cir. 2022) (refusing to read into the Oil Pollution Act a waiver of sovereign immunity because "Congress ... knows how to waive sovereign immunity when it wants to").

The plain meaning of the words in Rule 7001(7) is unmistakable. "Rules of statutory construction ... have no place... except in the domain of ambiguity." *Russell Motor Car Co. v. United States*, 261 U.S. 514, 519, 43 S. Ct. 428, 430, 67 L. Ed. 778 (1923).

Looking at the language of the Rule, "'are' is the present tense

13

second-person singular and present tense plural of be."

MERRIAM-WEBSTER.COM DICTIONARY, MERRIAM-WEBSTER,

https://www.merriam-webster.com/dictionary/are. Accessed 4 Jan. 2025.

"'Be' is an intransitive verb, 'to equal in meaning...'"

MERRIAM-WEBSTER.COM DICTIONARY, MERRIAM-WEBSTER,

https://www.merriam-webster.com/dictionary/be. Accessed 4 Jan. 2025.  These

definitions leave no doubt that when the Supreme Court prescribed, "The

following are adversary proceedings..." there was no room to make distinctions

without a difference.

Looking to the text's plain language, there is only one question: Was the

Trustee seeking equitable relief? If so then an adversary proceeding was

mandated, not discretionary.  The Rule plainly "does not require an inquiry into

the circumstances of the" relief sought. *Lake at Las Vegas Invs. Grp., Inc. v. Pac.*

*Malibu Dev. Corp.*, 933 F.2d 724, 727 (9th Cir. 1991).  And the proceedings

below unambiguously fulfill the only element, that the Trustee sought equitable

relief.  The Targets waived neither their rights to be confronted with an adversary

proceeding complaint, nor their right to be brought within the jurisdiction of the

14

Court by service of a summons with the complaint.[36]

There is no case cited in this record in which a court held that the Supreme Court did not really mean to mandated an adversary proceeding for equitable relief.  Obviously, if the targets of substantive consolidation, already within *in personam* jurisdiction of the bankruptcy court, consent to lesser procedural due process, the relief may be granted.  Such was the case in *Eastgroup*.  *Eastgroup Properties v. S. Motel Ass'n, Ltd.*, 935 F.2d 245, 246 (11th Cir. 1991), in which this Circuit Court approved the substantive consolidation of two entities which were within the jurisdiction of the bankruptcy court, on motion by the trustee of both entities. There is no mention of Bankruptcy Rule 7001 in *Eastgroup*.

Substantive consolidation being a non-statutory, extraordinary, equitable action, the bankruptcy court had only the authority to make a report and recommendation to the District Court.

> Article III, § 1, of the Constitution provides that " [t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Congress has in turn established 94 District Courts and 13 Courts of Appeals, composed of judges who enjoy the protections of Article III: life tenure and pay that cannot be diminished. Because these protections help to ensure the integrity and

---

[36] One may be deemed to have waived service of a summons and complaint. *Espinosa*, *infra* at U.S. 278, S. Ct. 1381, L. Ed. 2d 158.  The Targets specifically objected to the procedures employed by the Trustee and sanctioned by the Court.

independence of the Judiciary, "we have long recognized that, in general, Congress may not withdraw from" the Article III courts "any matter which, from its nature, is the subject of a suit at the common law, or in equity, or in admiralty." *Stern v. Marshall*, 564 U.S. ——, ——, 131 S.Ct. 2594, 2609, 180 L.Ed.2d 475 (2011) (internal quotation marks omitted).

*Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 668, 135 S. Ct. 1932, 1938, 191 L. Ed. 2d 911 (2015).

## The Court Lacked *In Personam* Jurisdiction Over Non-Debtors.

In response to the Sub Con Motion, the Targets noted the Court's lack of personal jurisdiction over them.[37]

It cannot now be gainsaid that the Court's motion practice complied with Rule 7001(7).  Assuming *arguendo* subject-matter jurisdiction, an adversary proceeding was necessary to strip non-debtor third parties of their assets and separate identities.

"'Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008)(citation omitted).

Without effective service of process, a court lacks personal jurisdiction over the defendant and lacks the power to enter judgment. *In re Worldwide Web*

---

[37] ECF 391, ¶ 4, ECF 395, p. 8.

16

*Sys., Inc.*, 328 F.3d 1291, 1298–1301 (11th Cir. 2003). Personal jurisdiction is a "composite notion" comprised of two distinct concepts: a defendant's "amenability to jurisdiction" and "notice to the defendant through valid service of process." *Prewitt Enters., Inc. v. Org. of Petroleum Exp. Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003) (quotation omitted). Even if amenable to jurisdiction, a defendant "is not obliged to engage in litigation unless [officially] notified of the action ... under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999).

*In re Cutuli*, 389 F. Supp. 3d 1051, 1057 (M.D. Fla. 2019).

"[A] judgment is void ... 'if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.' A judgment also is void ... if the rendering court was powerless to enter it." *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001). "A void judgment is a legal nullity." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270, 130 S. Ct. 1367, 1377, 176 L. Ed. 2d 158 (2010).

**The Court Erred by Applying Collateral Estoppel.**

"The purpose behind the doctrine of res judicata is that the 'full and fair opportunity to litigate protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.' " *Great Lakes Ins. SE*, at 1310 (*citing Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (quoting *Montana v. United States*, 440 U.S. 147,

17

153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)).

> Under Eleventh Circuit precedent, a claim will be barred by prior litigation if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction[38]; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases."

*Great Lakes Ins. SE*, at 1311, N.20, *citing Ragsdale*, at 1238.

The Sub Con Order was entered solely upon the bankruptcy court's findings in the Conversion Order.  Indeed, the Sub Con Motion simply "parroted" the factual findings of the Conversion Order.[39]

In *Cromwell v. Sac Cty.*, 94 U.S. 351, 353-371, 24 L. Ed. 195 (1876), the Supreme Court of the United States laid out the principles of estoppel by judgment.

> [W]here the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.

---

[38] The Targets do not contest the finality of the Conversion Order, or the competency of the Court's jurisdiction to convert the case to a liquidation.

[39] ECF 385.

18

***

These cases, usually cited in support of the doctrine that the determination of a question directly involved in one action is conclusive as to that question in a second suit between the same parties upon a different cause of action, negative the proposition that the estoppel can extend beyond the point actually litigated and determined. The argument in these cases, that a particular point was necessarily involved in the finding in the original action, proceeded upon the theory that, if not thus involved, the judgment would be inoperative as an estoppel.

***

On principle, a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action

Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defence in one action, which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and his own situation at the time. A party acting upon considerations like these ought not to be precluded from contesting in a subsequent action other demands arising out of the same transaction.

The Conversion Order resulted from motions filed against the Debtor by a putative creditor pursuant to 11 U.S.C. §1112(b)(1), (4), which provide, in pertinent part,

(b)(1)Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in

19

the best interests of creditors and the estate.

\*\*\*

(4)For purposes of this subsection, the term "cause" includes—

(A)substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B)gross mismanagement of the estate;

(C)failure to maintain appropriate insurance that poses a risk to the estate or to the public;

(D)unauthorized use of cash collateral substantially harmful to 1 or more creditors;

(E)failure to comply with an order of the court;

(F)unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(G)failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(H)failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);

(I)failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

(J)failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

(K)failure to pay any fees or charges required under chapter 123 of title 28;

(L)revocation of an order of confirmation under section 1144;

(M)inability to effectuate substantial consummation of a confirmed plan;

(N)material default by the debtor with respect to a confirmed plan;

(O)termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and

(P)failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

As is evident from the non-exclusive definition of cause, the focus of a

motion to convert a case from Chapter 11 to Chapter 7 is the conduct of the Debtor.

The various tests for substantive consolidation focus on the actions of the Targets. As between the Conversion Order and the Sub Con Order there is no identity of parties and no identity of issues.

In that neither the Trustee, nor the Targets were parties to the Conversion Order, only a notion of so-called "privity" would bind the parties to the findings in the Conversion Order. As set forth below by the Supreme Court, the Trustee has no "privity" with the Creditor. The "privity" of Targets with the Debtor is insufficient to bind them as identical parties, most of whom had no notice of the Conversion Motion.

> A person who was not a party to a suit generally has not had a "full and fair opportunity to litigate" the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the "deep-rooted historic tradition that everyone should have his own day in court." Indicating the strength of that tradition, we have often repeated the general rule that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."
>
> Though hardly in doubt, the rule against nonparty preclusion is subject to exceptions. For present purposes, the recognized exceptions can be grouped into six categories.
>
> First, "[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his

21

agreement." ***

Second, nonparty preclusion may be justified based on a variety of pre-existing "substantive legal relationship[s]" between the person to be bound and a party to the judgment. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor. These exceptions originated "as much from the needs of property law as from the values of preclusion by judgment."

Third, we have confirmed that, "in certain limited circumstances," a nonparty may be bound by a judgment because she was "adequately represented by someone with the same interests who [wa]s a party" to the suit.                                                              ***

Fourth, a nonparty is bound by a judgment if she "assume[d] control" over the litigation in which that judgment was rendered.        ***

Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy.                    ***

Sixth, in certain circumstances a special statutory scheme may "expressly foreclos[e] successive litigation by nonlitigants ... if the scheme is otherwise consistent with due process." Examples of such schemes include bankruptcy and probate proceedings, and *quo warranto* actions or other suits that, "under [the governing] law, [may] be brought only on behalf of the public at large."

*Taylor v. Sturgell*, 553 U.S. 880, 892–95, 128 S. Ct. 2161, 2171–73, 171 L. Ed. 2d 155 (2008)(citations omitted).

Neither the Targets, nor the Trustee agreed to be bound by the findings in the Conversion Order.  The only pre-existing "substantive legal relationship[s]" between the Targets and the Debtor are not within the real-estate related

22

qualifying relationships which are exceptions "as much from the needs of property law as from the values of preclusion by judgment."

The Debtor in no way represented the interests of the Targets.[40]  The Debtor sought to remain in control of its reorganization, against statutory grounds for wresting such control from the Debtor.

> [A] prior proceeding, to have binding effect on absent parties, would at least have to be "so devised and applied as to insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue[41].

*Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 801, 116 S. Ct. 1761, 1767, 135 L. Ed. 2d 76 (1996).  There are no common issues between a statutorily based motion to convert a reorganization case to a liquidation case, and a federal common-law proceeding to strip the Targets of their assets and separate identities.  The Court having found facts which fit conveniently into both actions does not "insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue."

---

[40]  The Bankruptcy court's Local Rule 9010-1(B)(1) provides, in pertinent part, "A corporation, partnership, trust, or other artificial entity cannot appear or act on its own behalf without an attorney in a case or proceeding..."(exceptions omitted).  The Targets were not represented by counsel through the Conversion Motion hearings.

[41]  There is no common legal issue between the Conversion Order and Sub Con Order.

23

None of the Targets "assume[d] control" over the contested matter which resulted in the Conversion Order. There are no proxies affected by the Sub Con Order who are relitigating the Conversion Order.

There is no applicable special statutory scheme that "expressly foreclos[ed] successive litigation by nonlitigants ... if the scheme is otherwise consistent with due process." The inclusion of "bankruptcy and probate proceedings" relate only to prior actions which cannot proceed due to matters delegated statutorily to a bankruptcy trustee, which "under [the governing] law, [may] be brought only on behalf of the public at large."

There being no applicable "proxy" exception to the requirement of identity of parties, there was no basis to give the Trustee the easy path to stripping the assets and separate identities of the Targets.

Because there are no common issues of law as between a statutorily based motion to convert a case from reorganization to liquidation and a non-statutory proceeding to strip the Targets of their assets and separate identities, collateral estoppel fails both on requirements 3 and 4.

**The Court Erred by Giving *Nunc Pro Tunc* Effect to its Order.**

> Federal courts may issue *nunc pro tunc* orders, or "now for then" orders, to "reflect the reality"of what has already occurred. "Such a decree presupposes a decree allowed, or ordered, but not entered, through

24

inadvertence of the court."

Put colorfully, "[n]unc pro tunc orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact." Put plainly, the court "cannot make the record what it is not."

*Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589

U.S. 57, 65, 140 S. Ct. 696, 700–01, 206 L. Ed. 2d 1 (2020).

By its *Nunc Pro Tunc* Order of September 27, 2023, the Court made its Sub

Con Order of July 12, 2023, effective as of March 5, 2021.  That "Orwellian

vehicle for revisionist history" equipped the Trustee with the apparent authority to

sue third parties to recover unauthorized post-petition transfers which occurred

years before entry of the Sub Con Order.[42]

As this Court of Appeals has held,

 "We would note that a *nunc pro tunc* order cannot be used to make a court action effective as of an earlier date at which the court did not actually take any relevant action. "A *nunc pro tunc* order merely recites court actions previously taken but not properly or adequately recorded." Its purpose "is to correct mistakes or omissions in the record so that the record properly reflects the events that actually took place."

*Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1262, N. 6 (11th Cir. 2021)(*citing*

*Acevedo*).  The Court exceeded its authority by giving an order entered in 2023 an

effective date of 2021, when there were no "court actions previously taken but not

---

[42]  See the amended complaint in 23-01085-PDR, included in the Appendix.

properly or adequately recorded" in 2021.

In this instance, the back-dating of the Sub Con Order was done while that order was on appeal.  It the *Nunc Pro Tunc* Order, the Court noted the proper procedures for amending an order which is on appeal, and then trampled the very cited procedures.[43]  The Sub Con Order was not ambiguous as to its contemporaneous effective date.

The Court had no authority to substantially change its Sub Con Order by entry of the *Nunc Pro Tunc* Order.  Modification of the substance of a final order is only permitted to correct a clerical mistake or a mistake arising from oversight or omission.  *Federal Home Loan Mortg. Corp. v. Matassino*, Fed.Appx. 687 (11th Cir. 2013).

In related "Orwellian" proceedings, the Trustee sued E. Scott Golden[44] to recover nearly $100,000 in attorney's fees and costs paid by Appellants Global Energy Sciences, LLC and Raw Materials Corp. to Mr. Golden, such payments

---

[43] ECF 514, p. 4-5.

[44]  In all, the Trustee filed 7 complaints seeking recovery of funds paid by one or more of the Targets to third parties, post-petition, such complaints having been filed on April 5, 2023, while the Sub Con Motion was pending.  DE#s 402, 403, 404, 405, 406, 407, and 408.

26

having been made after No Rust's Chapter 11 case was filed.[45]    The Court granted

Mr. Golden's Motion to Dismiss.[46]  An Amended Complaint[47] was filed, to which

Mr. Golden filed another Motion to Dismiss.[48]

The Court had the Sub Con Motion under advisement for 2 months and 17

days before issuing an unambiguous order with a contemporaneous effective date

on July 12, 2023.  Only after hearing Golden's second Motion to Dismiss, on

September 20, 2023[49],  did the Court salvage the Trustee's proceedings by *sua

sponte* making a huge substantive change to its Sub Con Order.  The *Nunc Pro

Tunc* Order and the Order Denying Motion to Dismiss were entered on the same

day, September 27, 2023, 7 days after hearing the Motion to Dismiss.

The *Nunc Pro Tunc* Order substantially changed the rights of the parties by

back-dating the Sub Con Order over two years.  Thus, the *Nunc Pro Tunc* Order

---

[45]  The court papers in Adversary Proceeding 23-01085-PDR shall be referred to as "AP ECF x".  The Complaint against Mr. Golden is included in the Appendix at AP ECF 1.

[46]  Docket entries in the Adversary Proceeding shall be referred to as "AP DE x".  Golden's Motion to Dismiss is at AP DE 5, the Order Granting is at AP DE 11, EOD 06/28/23.

[47]  AP DE 15.

[48]  AP DE 16.

[49]  AP DE 17.  The Order Denying Motion to Dismiss and the *Nunc Pro Tunc* Order were entered on the same day.

27

violates the requirements set forth by this Court in *Matassino*, and *Phuc Quang*.

> We have repeatedly cautioned that a "district court is not permitted, however, to clarify a judgment pursuant to Rule 60(a) to reflect a new and subsequent intent because it perceives its original judgment to be incorrect." *Weeks v. Jones*, 100 F.3d 124, 128–29 (11th Cir. 1996) (quotation omitted). Indeed, "errors that affect substantial rights of the parties are outside the scope of Rule 60(a)," and "may be corrected under Rule 60(b) if brought to the attention of the district court within the one year time limit." *Warner v. City of Bay St. Louis*, 526 F.2d 1211, 1212 (5th Cir. 1976) (footnote omitted).

*Phuc Quang*, at 835.

**The Court Does Not Have Subject-Matter Jurisdiction to Substantively Consolidate Non-Debtor Entities into the Bankruptcy Estate.**

The following lengthy quotation from *In re Pearlman* correctly analyzes the

lack of the Court's subject matter jurisdiction over non-debtor third parties.

> Substantive consolidation of multiple debtors is not a new or novel concept.16[50] Consolidation "involves the pooling of the assets and liabilities of two or more related entities; the liabilities of the entities involved are then satisfied from the common pool of assets created by consolidation."17[51] Substantively consolidating debtors' claims simplifies

---

[50] F.N. 16 *In re S & G Financial Services of South Florida*, 451 B.R. 573 (Bankr.S.D.Fla.2011) (*citing In re MMH Automotive Grp.*, 400 B.R. 885 (Bankr.S.D.Fla.2008) (Chapter 7 estates substantively consolidated); *Feltman v. Warmus (In re American Way Serv. Corp.)*, 229 B.R. 496 (Bankr.S.D.Fla.1999) (estates of debtor corporation and debtor subsidiary were substantively consolidated); *In re Vecco Constr. Indus.*, 4 B.R. 407 (Bankr.E.D.Va.1980) (substantive consolidation of debtor and four debtor subsidiaries)).

[51] F.N. 17 *Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 248 (11th Cir.1991).

28

the administration of interrelated bankruptcies by eliminating inter-company claims between related debtors and amalgamating duplicative claims "filed against related debtors by creditors uncertain as to where the liability should be allocated."18[52]

\*\*\*

A bankruptcy court's power to substantively consolidate related bankruptcy cases stems from its equitable powers and is a remedy unique to bankruptcy.23[53]

\*\*\*

There is a split of authority, however, as to whether a bankruptcy court has the authority to substantively consolidate non-debtors' assets and liabilities into a bankrupt debtor's estate.24[54] Some courts have granted motions to substantively consolidate debtors with non-debtors relying on § 105 of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provision of this title," to assert personal and subject matter jurisdiction over non-debtors,26[55] and to "ensure the equitable treatment of all creditors."27[56]

---

[52] F.N.18 *In re DRW Property Co.*, 54 B.R. 489, 494 (Bankr.N.D.Tex.1985). *See also In re Bonham*, 229 F.3d 750, 764 (9th Cir.2000).

[53] F.N. 23 *In re Murray Industries, Inc.*, 119 B.R. 820, 829–30 (Bankr.M.D.Fla.1990); Amended Memorandum Opinion Granting Substantive Consolidation of the Joint Debtors' Estates (Doc. No. 3489).

[54] F.N 24 *In re S & G Financial Services of South Florida*, 451 B.R. 573 (Bankr.S.D.Fla.2011).

[55] F.N. 26 *In re Munford*, 115 B.R. at 397.

[56] F.N. 27 *Id*. at 395 n. 1 (*citing In re Flora Mir Candy Corp.*, 432 F.2d 1060, 1062 (2d Cir.1970)). See cases involving consolidation of debtors with non-debtors: *In re Bonham*, 229 F.3d 750, 765 (9th Cir.2000) (*citing In re Creditors Serv. Corp.*, 195 B.R. 680 (Bankr.S.D.Ohio 1996); *Matter of New Center Hospital*, 187 B.R. 560 (E.D.Mich.1995); *In re Munford, Inc.*, 115 B.R. 390 (Bankr.N.D.Ga.1990); *In re Tureaud*, 45 B.R. 658 (Bankr.N.D.Okla.1985), aff'd, 59 B.R. 973 (1986); *In re Crabtree*, 39 B.R. 718 (Bankr.E.D.Tenn.1984); *In re Bolze*, 2009 WL 2232802 (Bankr.E.D.Tenn. July 23, 2009) (failing to draw a

Other courts reject the legal conclusion that § 105 grants bankruptcy courts the authority to substantively consolidate non-debtors, or, in other words, force entities to join the bankruptcy case whether they agree or not. These courts conclude that substantive consolidation is purely a bankruptcy remedy and does not extend to the assets and affairs of a non-debtor.28[57] This Court agrees and declines to substantively consolidate the Non–Debtors.

First, § 105 only gives bankruptcy courts the power to do what is necessary or appropriate to accomplish the goals of the Bankruptcy Code. The section does not give bankruptcy courts unfettered power. Bankruptcy courts cannot and should not simply drag unwilling entities that never chose to file bankruptcy into a bankruptcy forum simply because it is expedient and will help one party or another.

Second, allowing substantive consolidation of non-debtors under § 105(a) circumvents the stringent procedures and protections relating to involuntary bankruptcy cases imposed by § 303 of the Bankruptcy Code. Section 303 authorizes an involuntary petition of an entity, provided specific rules are

---

distinction between sub con and piercing the corporate veil); *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515 (2nd Cir.1988); *Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp.)*, 810 F.2d 270, 276 (D.C.Cir.1987)).

[57] F.N. 28 See cases declining to substantively consolidate debtors and non-debtors: *In re Circle Land and Cattle Corp.*, 213 B.R. 870, 877 (Bankr.D.Kan.1997) (*citing In re Alpha & Omega Realty, Inc.*, 36 B.R. 416 (Bankr.D.Idaho 1984)); *In re DRW Property Co. 82*, 54 B.R. 489 (Bankr.N.D.Tex.1985); *In re R.H.N. Realty Corp.*, 84 B.R. 356 (Bankr.S.D.N.Y.1988); *In re Julien Co.*, 120 B.R. 930 (Bankr.W.D.Tenn.1990); *In re Lease–A–Fleet*, 141 B.R. 869 (Bankr.E.D.Pa.1992); *In re Ira S. Davis, Inc.*, 1993 WL 384501 (E.D.Pa. September 22, 1993); *In re Hamilton*, 186 B.R. 991 (Bankr.D.Colo.1995). These decisions question whether bankruptcy courts have subject matter jurisdiction over non-debtor corporations for purposes of substantive consolidation on the basis that it is contrary to the Bankruptcy Code and its limitations for involuntary bankruptcy petitions under § 303.

30

followed to protect the putative debtor. For example, a minimum claim amount is required to even initiate an involuntary proceeding. If the movant clears this first hurdle, and the number of claimholders is significant, the movant must obtain a consensus of at least three other claimholders to ensure the action is supported and justified. The stakes of hastily forcing a party into involuntary bankruptcy are high because if the protective requirements of § 303 are not met, a court can hold all petitioning creditors liable for costs, attorneys' fees, and damages. Given the significant protections § 303 provides to debtors facing involuntary bankruptcy, and the lack of commensurate protections for substantive consolidation, "forcing a non-debtor into bankruptcy via substantive consolidation circumvents these strict requirements and is in contravention of [the Code]." Section 105 of the Bankruptcy Code only allows a bankruptcy court to take actions "necessary or appropriate" to achieve a stated statutory goal. The section certainly does not and should not allow a bankruptcy court to circumvent statutory protections built into the code.

Third, state law provides remedies for parties who can establish that a non-debtor entity truly is an "alter ego"34[58] of a voluntary debtor. In essence, by piercing the corporate veil, the party proves that the two entities legally are the same, not two different entities. Therefore, they are not really debtor and non-debtor, but one.

Courts generally uphold the corporate form to maintain its limited liability purpose because "[e]very corporation is organized as a business organization to create a legal entity that can do business in its own right and on its own credit as distinguished from the credit and assets of its individual stockholders." But, when corporate separateness is improperly disregarded such that a corporation and its subsidiary act as "mere instrumentalities" of each other, litigants may pierce the veil of a corporation's limited liability and hold a corporation's owners responsible for its debts. To pierce the corporate veil under Florida law, the claimant has the heavy burden to prove, by a preponderance of the evidence, that:

---

[58] F.N. 34 *In re Hillsborough Holdings Corp.*, 166 B.R. 461 (Bankr.M.D.Fla.1994).

> (1) the shareholder dominated and controlled the corporation to such an extent that the [corporation's] independent existence, was in fact non-existent and the ... shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

> Florida's high regard for corporate ownership requires a showing that the corporation was specifically organized or used to mislead creditors or to perpetrate fraud before a party can pierce a corporation's veil. Absent such a showing, "every judgment against a corporation could be exploited as a vehicle for harassing the stockholders and entering upon fishing expeditions into their personal business and assets." Even though this proves to be a high bar, Florida's alter ego remedy is an alternative to substantive consolidation that protects a non-debtor's corporate identity without usurping the protections of the Bankruptcy Code.

> As such, this Court concludes any request to substantively consolidate non-debtors must fail under § 105(a) of the Bankruptcy Code because it is not an act that is "necessary or appropriate" to carry out any legitimate bankruptcy purpose. Rather, parties have other tools, albeit accompanied by stringent and befitting proof requirements, to force a non-debtor entity into bankruptcy. Parties can file involuntary bankruptcy petitions if they can plead and meet all the requirements of § 303 of the Bankruptcy Code. Alternatively, they can rely on state law and the attendant legal theories of alter ego and piercing the corporate veil. But, they cannot get the shortcut of relying on § 105 to substantively consolidate non-debtors.40

*In re Pearlman*, 462 B.R. 849, 853–56 (Bankr. M.D. Fla. 2012)(Footnotes 1-22, 25, 29-33, and 35-40 omitted)(accord, *In re Archdiocese of Saint Paul & Minneapolis*, 553 B.R. 693, 700 (Bankr. D. Minn.), *aff'd sub nom. Off. Comm. of Unsecured Creditors v. Archdiocese of Saint Paul & Minneapolis*, 562 B.R. 755 (D. Minn. 2016), *aff'd sub nom. In re Archdiocese of Saint Paul & Minneapolis*,

32

888 F.3d 944 (8th Cir. 2018).

On appeal the Eighth Circuit Court of Appeals noted,

After establishing the Targeted Entities are non-moneyed corporations and organizations, the bankruptcy court determined that granting the motion for substantive consolidation, over the objections of the Targeted Entities, would necessarily pull non-profit entities into bankruptcy involuntarily in contravention of § 303(a). Therefore, the bankruptcy court decided it did not have the legal authority to substantively consolidate Debtor and Targeted Entities, because to do so would override an explicit statutory protection in the Bankruptcy Code. We agree. Section 303(a) prevents the use of § 105(a) to force truly independent non-profit entities into involuntary bankruptcy.

We leave for another day the issue of whether a non-profit non-debtor that is the alter ego, under state law, of the debtor, or has been formed as part of a fraudulent scheme, such as a Ponzi scheme, can be consolidated. The Committee has not argued an alter ego theory here. At most, the Committee alleges facts which, taken as true, indicate that there had been isolated incidents of failures to follow corporate formalities and an occasional transfer of assets. The Committee couples those examples with the argument that the Archbishop has virtually unfettered control of the non-debtor entities through his membership on each board of directors and his ability to appoint and remove the other directors.

We cannot conclude on the facts as alleged in the complaint that these allegations overcome the express prohibition of § 303(a) against an involuntary bankruptcy of non-debtor non-profits. The isolated incidents of lack of corporate formality and commingling of assets fall far short of the requirement for alter ego status under Minnesota law.

*In re Archdiocese of Saint Paul & Minneapolis*, 888 F.3d 944, 953 (8th Cir. 2018)

After consideration of cases decided by the Supreme Court, the many courts

which have declined to permit substantive consolidation of non-debtor entities

33

through the broad net of 11 U.S.C. § 105 are on the winning side.

In examining third-party releases in a Chapter 11 plan, the Supreme Court looked to the Code for any authority, and finding none, prohibited such releases. *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 222, 144 S. Ct. 2071, 2085, 219 L. Ed. 2d 721 (2024). One need not find a prohibition in the Code, rather, the bankruptcy courts are authorized to exercise only those powers specifically enumerated in the Code.

Where the Code prescribes priorities and procedures, non-Code alternatives are not permitted. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 137 S. Ct. 973, 979, 197 L. Ed. 2d 398 (2017).

It is a legal error for a bankruptcy court to approve schemes that run contrary to the provisions of bankruptcy law. *Espinosa*, at U.S. 275, S. Ct. 1380, L. Ed. 2d 158.

"It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 421, 134 S. Ct. 1188, 1194, 188 L. Ed. 2d 146 (2014)(citations omitted). A statute's general permission to take actions of a certain type must yield to specific provisions found elsewhere.

Substantive consolidation of non-debtor entities runs contrary to the

34

provisions of the Code for commencement of involuntary petitions. 11 U.S.C. § 303.

One section of the Code explicitly mandates the manner in which non-debtor entities are to be stripped of their assets and separate identities. 11 U.S.C. § 544[59] in which the trustee is treated as a "hypothetical lien creditor", provides, in pertinent part,

> (a)The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of...
>
> ***
>
> (2)a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists...

"In deciding [to pierce the corporate veil], we are applying Florida's substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011).

The Supreme Court has made clear that such decisions are not to be made on the basis of any perceived "federal common law."

Federal courts, unlike state courts, are not general common-law courts and

---

[59] The Trustee's Complaint against Golden was a classic "alter ego" complaint.  AP ECF 1.

do not possess a general power to develop and apply their own rules of decision.... *Erie* recognized as much in ruling that a federal court could not generally apply a federal rule of decision, despite the existence of jurisdiction, in the absence of an applicable Act of Congress.

***

We have always recognized that federal common law is "subject to the paramount authority of Congress." It is resorted to "[i]n absence of an applicable Act of Congress," and because the Court is compelled to consider federal questions "which cannot be answered from federal statutes alone,"... [W]hen Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears. This was pointedly recognized in *Illinois v. Milwaukee* itself, 406 U.S., at 107, 92 S.Ct., at 1394 ("new federal laws and new federal regulations may in time pre-empt the field of federal common law of nuisance"), and in the lower court decision extensively relied upon in that case, *Texas v. Pankey*, 441 F.2d 236, 241 (CA10 1971) (federal common law applies "[u]ntil the field has been made the subject of comprehensive legislation or authorized administrative standards") (quoted in *Illinois v. Milwaukee, supra*, at 107, n. 9, 92 S.Ct., at 1395, n. 9).

In *Arizona v. California*, 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963), for example, the Court declined to apply the federal common-law doctrine of equitable apportionment it had developed in dealing with interstate water disputes because Congress, in the view of a majority, had addressed the question.

***

In *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), the Court refused to provide damages for "loss of society" under the general maritime law when Congress had not provided such damages in the Death on the High Seas Act:

> "We realize that, because Congress has never enacted a comprehensive maritime code, admiralty courts have often been called upon to supplement maritime statutes. The Death on the High Seas Act, however, announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory

36

negligence, survival, and damages.... The Act does not address every issue of wrongful-death law, ... but when it does speak directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." *Id*., at 625, 98 S.Ct., at 2015.

*City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 312–15, 101 S. Ct. 1784, 1790–92, 68 L. Ed. 2d 114 (1981).

By imposing state rules where federal law already provided a standard, *Georgia Power* improperly expanded federal common law. That assertion of judicial authority is justified only when a federal court is "compelled to consider federal questions which cannot be answered from federal statutes alone." *City of Milwaukee v. Illinois*, 451 U.S. 304, 314, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981)(quotation omitted). Such instances are "few and restricted"—essentially limited to cases in which a statute lacks a necessary rule of decision. *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640–41, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (quotation omitted); *City of Milwaukee*, 451 U.S. at 314, 101 S.Ct. 1784. Even then, federal common law is appropriate only where it is "necessary to protect uniquely federal interests" or where Congress itself has authorized the courts to "formulate substantive rules of decision." *Tex. Indus.*, 451 U.S. at 640–41, 101 S.Ct. 2061 (quotation omitted).

Here, the Federal Power Act does not lack a rule of decision—it provides one. Section 21 of the statute authorizes "the exercise of the right of eminent domain," a power that is defined by the Fifth Amendment. 16 U.S.C. § 814; *see Miller*, 317 U.S. at 380, 63 S.Ct. 276; *Bodcaw*, 440 U.S. at 203, 99 S.Ct. 1066. The Act thus has no "gaps" requiring interstitial lawmaking, and it offers no indication that Congress meant for federal courts to build out compensation standards.

*Sabal Trail Transmission, LLC v. 3.921 Acres of Land in Lake Cnty. Fla.*, 74 F.4th 1346, 1349–50 (11th Cir. 2023)(Grant, Circuit Judge, concurring).

37

One must ask where the Trustee's right to seek substantive consolidation arises, post-petition, in the absence of specific statutory authority?  The Debtor's estate does not include any cause of action for substantive consolidation.

> Property of a bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1). The scope of § 541(a)(1) is broad, and includes property of all types, tangible and intangible, as well as causes of actions. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 & n. 9, 103 S.Ct. 2309, 2313 & n. 9, 76 L.Ed.2d 515 (1983).

*In re Meehan*, 102 F.3d 1209, 1210 (11th Cir. 1997).

> Further, post-petition causes of action are not part of a Debtor's estate.

> Pre-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not. Specifically, the debtor's filing of a petition with the bankruptcy court commences a voluntary bankruptcy case. 11 U.S.C. § 301. The commencement of a voluntary bankruptcy case creates an estate generally consisting of the "legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Although the estate is construed broadly, *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983), Congress expressly cautioned that the Bankruptcy Code "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case.... [The trustee] could take no greater rights than the debtor himself had." S.Rep. No. 95–989, at 82 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5868; H.R.Rep. No. 95–595, at 367–68 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6323.

*In re Witko*, 374 F.3d 1040, 1042–43 (11th Cir. 2004).

If substantive consolidation is not property of the bankruptcy estate, and if federal common law cannot be used where the Code provides a remedy, then

38

substantive consolidation, entirely a creation of federal common law, cannot be used to consolidate non-debtor entities into a bankruptcy estate.

## XI.  CONCLUSION

The Trustee, through the Sub Con Motion violated clear and unambiguous requirements of the Bankruptcy Rules, failed to establish *in personam* jurisdiction over the the Targets, failed to create a sufficient independent factual record, and requested the Court to take actions outside of the Court's subject matter jurisdiction.  The Court's back dating of the Sub Con order by over 2 years was clear error.

Wherefore, Appellants, Targets of the Sub Con Motion and Order request this Court to reverse the Bankruptcy Court's Sub Con Order, and remand with instructions to enter an order denying the Sub Con Motion.

## CERTIFICATE OF SERVICE

Ms. Slott was served, through counsel, the foregoing by electronic notice on January 10, 2025.

Respectfully submitted,

**FLORIDA BANKRUPTCY GROUP, LLC**
4121 N. 31st Ave.
Hollywood, FL 33021-2011
Attorneys for Appellants
954 893 7670/954 893 7675 Fax
*s/Kevin C. Gleason*
Florida Bar No. 369500
BankruptcyLawyer@aol.com (direct email)

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMIT, TYPEFACE
## REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 9,865 words.

*s/Kevin C. Gleason*
Florida Bar No. 369500
BankruptcyLawyer@aol.com (direct email)

40